UNITED STATES, Appellee

v.

Rob B. YAMMINE, Sergeant
U.S. Marine Corps, Appellant

No. 09-0720

Crim. App. No. 200800052

United States Court of Appeals for the Armed Forces

Argued March 4, 2010

Decided June 10, 2010

RYAN, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN and STUCKY, JJ., joined.  BAKER, J., filed a separate opinion concurring in the result.

Counsel

For Appellant:  Lieutenant Brian D. Korn, JAGC, USN (argued).

For Appellee:  Captain Robert E. Eckert Jr., USMC (argued); Brian K. Keller, Esq. (on brief).


Military Judge:  Raymond E. Beal II


THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Yammine, No. 09-0720/MC

Judge RYAN delivered the opinion of the Court.

As relevant to the granted issue,[1] Appellant was charged with two specifications of forcible sodomy with a child under the age of sixteen, in violation of Article 125, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 925 (2006), and convicted by a general court-martial -- composed of officer and enlisted members -- of one count of sodomy with a child who had attained the age of twelve but was under the age of sixteen, and one count of indecent acts with a child, in violation of Articles 125 and 134, UCMJ, 10 U.S.C. §§ 925, 934 (2006), respectively.[2] The members sentenced him to a dishonorable discharge, eight years of confinement, forfeiture of all pay and allowances, a fine of $7000 (with an additional year of confinement if the fine was not paid), and reduction to the grade of E-1. The convening authority approved the adjudged sentence.

This case presents the questions whether evidence of a list of computer filenames suggestive of homosexual acts involving preteen and teenage boys was admissible under Military Rule of

---

[1] We granted review of the following issue:

> WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE ADMITTED EVIDENCE OF FILE NAMES FOUND ON APPELLANT'S COMPUTER THAT WERE SUGGESTIVE OF HAVING CONTAINED CHILD PORNOGRAPHY BUT WHOSE ACTUAL CONTENT WAS UNKNOWN, ALLOWING THE GOVERNMENT TO ARGUE APPELLANT'S PROPENSITY OR MOTIVE TO COMMIT SODOMY OR INDECENT ACTS WITH A MINOR.

[2] Appellant also pleaded guilty to one specification of larceny under Article 121, UCMJ, 10 U.S.C. § 921 (2006).

Evidence (M.R.E.) 414 (as evidence that Appellant had a propensity to commit sodomy with a child over the age of twelve but under the age of sixteen) or, alternatively, whether such evidence was admissible under M.R.E. 404(b) (to show motive, plan, or intent).  We answer both questions in the negative. The computer filenames were treated as synonymous with possession or attempted possession of child pornography, which, under the facts of this case, we conclude is not a "qualifying" offense under M.R.E. 414.  Nor, under the facts of this case, were the filenames admissible under M.R.E. 404(b) -- the prejudicial effect of the evidence substantially outweighs whatever marginal relevance and probative value these computer filenames have to the charged offenses.

## I.  Facts

Appellant was a drill instructor at Marine Corps Recruit Depot Parris Island, South Carolina.  On July 10, 2006, Appellant encountered a fourteen-year-old boy, JP, at the base library.

JP testified as follows:  Appellant followed him to the library restroom and forcibly performed oral sodomy on him, after which Appellant asked if JP needed a ride home.  JP said "Okay," put his bicycle into the trunk of Appellant's car, and the two drove together to Appellant's barracks.  The two went to Appellant's room, where Appellant handcuffed JP to the bed and

3

forcibly performed anal sodomy on him. Afterwards, Appellant drove JP home and gave JP his cell phone number. JP called Appellant several times over the next few days.

In contrast, Appellant denied any physical contact occurred, either in the library restroom or in the barracks room. Appellant testified that after the two left the library, JP followed him back to his barracks on his bicycle rather than riding in the car. Appellant stated that JP "wanted to hang out and talk about odds and ends. Like I said, he was bored so, I assumed that's why he showed up." While Appellant acknowledged that the two talked in his room for about ten to fifteen minutes, he stated that his door was not even closed during that brief period because the air conditioner was broken.

On July 23, 2006, JP relayed his version of the events to his brother-in-law, who contacted the military police. The case was referred to Special Agent (SA) Tony Richardson of the Naval Criminal Investigative Service (NCIS), who interviewed JP. JP was able to point out Appellant's building and provide a description of Appellant's room and of some of the items in the room.

SA Richardson arranged a telephone intercept to see if Appellant would be willing to meet JP. JP called Appellant and asked Appellant to meet him at an on-base hotel that night. Appellant agreed but did not actually show up at the hotel.

4

NCIS arrested Appellant that evening. During a consensual search of his room, Appellant's laptop computer was seized and sent to the Defense Computer Forensics Laboratory (DCFL). DCFL discovered three types of evidence on the hard drive -- filenames, one frame of a movie file, and remnants of Internet searches using the term "Lolita." The files themselves had been deleted and overwritten. DCFL could determine that the files had been downloaded between October 31 and November 1, 2004, but could not tell when the files had been deleted. All that remained were the filenames -- there were no images of child pornography on the computer.

Appellant moved in limine to prevent the introduction of the following list of filenames:

(1) boy.kiddy.pedo.DX17[1].mpeg

(2) /C:/Program Files/Kazaa/My Shared Folder/10 y teen boys sex (1).jpg

(3) /C:/Program Files/Kazaa/My Shared Folder/pedo preteen boy little boy get (1).jpg

(4) /C:/Program Files/Kazaa/My Shared Folder/gay teen - skinny boy sucked.jpg

(5) /C:/Program Files/Kazaa/My Shared Folder/pedo preteen boy little boy gets sucked.jpg

(6) /C:/Program Files/Kazaa/My Shared Folder/pedo preteen boy boner . . . mal19-72.jpg

(7) /C:/Program Files/Kazaa/My Shared Folder/2 Boys-Teen Boy Fucking Preteen-B 26W.jpg

(8) /C:/Program Files/Kazaa/My Shared Folder/PEDO-Boy Fun

Series 1.jpg

(9)  C:\Documents and Settings\Rob Yammine\Incomplete\T-1202102-UNDERAGED BOY FUCKED BY JUDGES R@YGOLD (7) child porn sex underage illegal incest lolita preteen !Y! incest zYz young KIDDY DAD nude French illegal pee forced violated.wmv

(10) C:\Documents and Settings\Rob Yammine\Incomplete\T-51175444-11 yr yng lolita riding dad (preteen incest kiddy rape)(1)(2)(1).mpeg

(11) C:\Documents and Settings\Rob Yammine\Incomplete\T-80618-2_fuck dicks young sex teen ass boy blondes preteen cum gay cock teens little bareback boys(1).jpg

(12) C:\Documents and Settings\Rob Yammine\Incomplete\T-5385287-sex pjk rbv maria kdv nudists.mov

(13) Fucking very fast in the ass by three (illegal_preteen_underage_lolita_kiddy_child_incest_ xxx_porno_gay_fuck_young_naked_nude_little_g.mpeg.

The military judge denied the motion and admitted the filenames under M.R.E. 414 on the theory that they were evidence of "the accused's commission of another offense of child molestation," thus allowing them to be used as evidence of the accused's "propensity to engage in the alleged acts." The military judge added that the filenames "may further be used to establish motive, plan and as evidence of the element for the lesser-included offense of indecent acts with a child."

On appeal, the United States Navy-Marine Corps Court of Criminal Appeals (CCA) held that it was error to admit filenames (10) and (12) and sua sponte determined that it was also error to admit the movie file frame (which did not portray child

pornography) and the remnants of Internet searches using the term "Lolita." United States v. Yammine, 67 M.J. 717, 729-30 (N-M. Ct. Crim. App. 2009). However, it held these errors did "not have a substantial influence on the findings." Id. at 730 (citations and quotation marks omitted). The CCA also concluded that the remaining filenames were properly admitted under M.R.E. 414 and that even under the "narrower purposes" permitted by M.R.E. 404(b), "this evidence would be admissible as probative of the appellant's motive and intent in relation to the lesser included offense of indecent liberties with a child." Id. at 726.

## II. Discussion

### A. M.R.E. 414

M.R.E. 414 permits the admission of evidence of a prior act of "child molestation" to show propensity to commit a charged act of "child molestation." M.R.E. 414. While we review a military judge's decision to admit evidence for an abuse of discretion, the threshold question with respect to the admissibility of the filename evidence in this case -- whether the filename evidence constitutes evidence that Appellant committed another offense of "child molestation" under M.R.E. 414 -- is one of law, reviewed de novo. See United States v. DeCologero, 530 F.3d 36, 58 (1st Cir. 2008), cert. denied, 129 S. Ct. 513 (2008) (citing United States v. Munoz-Franco, 487

7

F.3d 25, 34 (1st Cir. 2007)).

For evidence to be admitted under M.R.E. 414:

[T]he military judge must make three threshold findings: (1) whether the accused is charged with an act of child molestation as defined by M.R.E. 414(a); (2) whether the proffered evidence is evidence of his commission of another offense of child molestation as defined by the rule; and (3) whether the evidence is relevant under M.R.E. 401 and M.R.E. 402.[3]

United States v. Ediger, 68 M.J. 243, 248 (C.A.A.F. 2010) (citing United States v. Bare, 65 M.J. 35, 36 (C.A.A.F. 2007)).[4]

In analyzing whether the filenames were evidence that Appellant had committed "another offense of child molestation as defined by the rule" (the second threshold finding), the military judge reasoned that under M.R.E. 414(d)(5), an "offense of child molestation" includes "a crime under Federal law . . . that involved deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on a child." He also noted that possession of child pornography

---

[3] Relevance under M.R.E. 401 and M.R.E. 402 is enforced through M.R.E. 104(b). United States v. Wright, 53 M.J. 476, 483 (C.A.A.F. 2000). "The court simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence." Huddleston v. United States, 485 U.S. 681, 690 (1988).

[4]     Once the three threshold factors are met, the military judge must then apply a balancing test under M.R.E. 403. The importance of careful balancing arises from the potential for undue prejudice that is inevitably present when dealing with propensity evidence. Inherent in M.R.E. 414 is a general presumption in favor of admission.

Ediger, 68 M.J. at 248 (citations and quotation marks omitted) (footnote omitted).

violated 18 U.S.C. § 2252A (2006), the federal statute criminalizing "[c]ertain activities relating to material constituting or containing child pornography," and that the Sixth Circuit had stated that offenses involving child pornography constitute "child molestation" under Fed. R. Evid. 414. See United States v. Seymour, 468 F.3d 378, 385 (6th Cir. 2006). Finally, the military judge found that the suggestive filenames were evidence that the accused possessed or attempted to possess child pornography in violation of 18 U.S.C. § 2252A. Based on this reasoning, the military judge concluded that the list of filenames was evidence of Appellant's commission of another offense of child molestation as defined by M.R.E. 414.

The CCA agreed that possession or attempted possession of child pornography qualifies as "child molestation" under M.R.E. 414(d)(5) because it is a crime that involves "'deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain o[n] a child.'" Yammine, 67 M.J. at 724. Additionally, the CCA found that possession of child pornography also qualifies under M.R.E. 414(d)(2) and (g)(5) as any "'sexually explicit conduct with children . . . proscribed by . . . Federal law' because it involves the 'lascivious exhibition of the genitals or pubic area of any person.'" Id. We disagree with both rationales as applied to the evidence in this case.

9

Our review centers on the meaning of an "offense of child molestation," which is defined in detail by M.R.E. 414(d)-(g):

(d)  For purposes of this rule . . . 'offense of child molestation' means an offense punishable under the Uniform Code of Military Justice, or a crime under Federal law or the law of a State that involved-

(1)  any sexual act or sexual contact with a child proscribed by the Uniform Code of Military Justice, Federal law, or the law of a State;

(2)  any sexually explicit conduct with children proscribed by the Uniform Code of Military Justice, Federal law, or the law of a State;

(3)  contact between any part of the accused's body, or an object controlled or held by the accused, and the genitals or anus of a child;

(4)  contact between the genitals or anus of the accused and any part of the body of a child;

(5)  deriving sexual pleasure or gratification from the infliction of death, bodily injury, or physical pain on a child; or

(6)  an attempt or conspiracy to engage in conduct described in paragraphs (1) through (5) of this subdivision.

(e)  For purposes of this rule, the term "sexual act" means:

(1)  contact between the penis and the vulva or the penis and the anus, and for purposes of this rule, contact occurs upon penetration, however slight, of the penis into the vulva or anus;

(2)  contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus;

(3)  the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any

10

person; or

  (4)  the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

  (f)  For purposes of this rule, the term "sexual contact" means the intentional touching, either directly or through clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person.

  (g)  For purposes of this rule, the term "sexually explicit conduct" means actual or simulated:

  (1)  sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between person of the same or opposite sex;

  (2)  bestiality;

  (3)  masturbation;

  (4)  sadistic or masochistic abuse; or

  (5)  lascivious exhibition of the genitals or pubic area of any person.

"This definition provides an <u>exclusive</u> list of offenses that qualify as 'offense[s] of child molestation.'" <u>United States v. Schroder</u>, 65 M.J. 49, 53 (C.A.A.F. 2007) (alteration in original; emphasis added).  Thus, to be properly admitted under M.R.E. 414, the filename evidence "must fall within the specific definition of an 'offense of child molestation' set out in M.R.E. 414."  <u>Id.</u>

    "M.R.E. 414, like its counterpart Fed. R. Evid. 414, was

'intended to provide for more liberal admissibility of character evidence in criminal cases of child molestation where the accused has committed a prior act of sexual assault or child molestation.'" Id. at 55 (emphasis added) (quoting Manual for Courts-Martial, United States, Analysis of the Military Rules of Evidence app. 22 at A22-37 (2005 ed.) (MCM)). But this liberal admissibility standard does not guide or inform its threshold inquiry: whether a prior act is one of child molestation. We have noted before the "inherent tension between the Rule and traditional concerns regarding convictions based on 'bad character' evidence. Such evidence has long been regarded as having the tendency to relieve the government of its constitutional burden to prove every element of the charged offense beyond a reasonable doubt." Id. Thus, we have interpreted whether an offense "qualifies" under M.R.E. 414 strictly, rather than expansively, and continue to require that the offense "fall within the [rule's] specific definition." Id. at 53. Possession or attempted possession of child pornography, while a violation of federal law, does not fall within any defined instance of "child molestation" relied on by the military judge or CCA under the facts of this case.

As an initial matter, we note that M.R.E. 414(a) provides for the admissibility of "offense[s] of child molestation" committed by the accused. M.R.E. 414(d) defines "child" as a

12

"person below the age of sixteen" (emphasis added). M.R.E. 414(d)(2) refers to offenses that have involved "sexually explicit conduct with children" (emphasis added). M.R.E. 414(d)(5) refers to offenses that have involved "death, bodily injury, or physical pain on a child" (emphasis added). These provisions reflect that the rule limits qualifying offenses to crimes that involve actual persons. While filenames may be enough to satisfy probable cause, see United States v. Leedy, 65 M.J. 208, 215-18 (C.A.A.F. 2007), the admission of propensity evidence requires more, see M.R.E. 412, M.R.E. 413, M.R.E. 414.

We do not suggest that possession of particular child pornography could not ever fall within M.R.E. 414(d)(5). However, in this case there is no way to know what, if anything, the files originally attached to the filenames depicted (even though the filenames themselves were clearly suggestive). Thus, there is not only no way to know whether actual children were involved, there is also no way to know whether the conduct depicted otherwise falls within M.R.E. 414(d)(5). The military judge nonetheless concluded, without discussion, that possession or attempted possession of child pornography constitutes an offense of child molestation under M.R.E. 414(d)(5). But while "the infliction of death, bodily injury, or physical pain on a child," M.R.E. 414(d)(5), may and undoubtedly does occur in the creation of much child pornography, in other instances, given

13

the breadth of the conduct and ages covered, it may not. See,
e.g., 18 U.S.C. § 2256(2)(A)(iii), (v) (2006) (including
masturbation and lascivious exhibition of the genitals or pubic
area as sexually explicit conduct constituting child
pornography). However emotionally traumatic possession by
others of images involving that conduct may be for the children
involved, the President limited application of this subsection:
"infliction of death," "bodily injury," and "physical pain" are
specific and delimiting terms.

The CCA's alternative rationale, that the filenames
qualified under M.R.E. 414(d)(2) (an offense or crime involving
"any sexually explicit conduct with children proscribed by the
Uniform Code of Military Justice, Federal law, or the law of a
State"), is also problematic. The CCA majority relied entirely
on cases involving Fed. R. Evid. 414(d)(2). Yammine, 67 M.J. at
724 & n.6. In so doing, the CCA failed to account for the
differences between the federal rule and its military
counterpart. The federal rule includes as an offense of child
molestation "any conduct proscribed by chapter 110 of title 18,
United States Code." Fed. R. Evid. 411(d)(2). This includes
any violation of 18 U.S.C. § 2252A. See United States v.
Bentley, 475 F. Supp. 2d 852, 856-57 (N.D. Iowa 2007), aff'd,
561 F.3d 803, 816 (8th Cir. 2009) (citing Fed. R. Evid.
414(d)(2)). In contrast, M.R.E. 414(d)(2) uses more specific

14

language, defining this category of qualifying offense as "any sexually explicit conduct <u>with</u> <u>children</u> proscribed by the [UCMJ], Federal law, or the law of a State" (emphasis added). We recently determined, in the context of construing the offense of indecent liberties with a child (a violation of Article 134, UCMJ), that to occur "with" a child, or "with" children, conduct must be in the physical presence of a child or children. <u>See</u> <u>United States v. Miller</u>, 67 M.J. 87, 90-91 (C.A.A.F. 2008). By analogy, this rules out the possession or attempted possession of child pornography under the facts of this case.[5]

If there were no military rule, we are mindful that we would apply the federal rule. M.R.E. 101(b)(1). But the rule recognized in federal district courts is facially more expansive than, and thus inconsistent with, M.R.E. 414(d)(2). Consequently, the civilian cases that admit, under Fed. R. Evid. 414, evidence of offenses involving child pornography -- such as <u>Seymour</u>, 468 F.3d at 385; <u>Bentley</u>, 475 F. Supp. 2d at 857; and

---

[5] It would be contrary to our insistence that conduct fall precisely within the rule, <u>see</u> <u>Schroder</u>, 65 M.J. at 53, to hold that the language of this subsection of the rule precisely covers -- as the concurring opinion suggests, <u>Yammine</u>, __ M.J. __ (3-4) (Baker, J., concurring in the result) -- sexually explicit conduct with children by someone other than the accused for use as propensity evidence against the accused. If the President should decide to expand the scope of this subsection -- for the reasons suggested by the concurring opinion, <u>id.</u> at __ (4), or otherwise -- he can make the rule within the military justice system precisely parallel to the federal rule in this respect by amending the language of the subsection.

United States v. Sturm, 590 F. Supp. 2d 1321, 1327 (D. Colo. 2008) -- are not applicable, as they examined a rule with different text.

Because the military judge's view of the law with respect to a qualifying offense under M.R.E. 414 was erroneous, he abused his discretion by admitting the filename evidence -- even though he otherwise recognized and applied the correct standards.  See United States v. Rader, 65 M.J. 30, 32-34 (C.A.A.F. 2007) (recognizing that an abuse of discretion can occur when the military judge has an erroneous view of the law).

### B.  M.R.E. 404(b)

In the alternative, the military judge noted that the filename evidence was admissible under M.R.E. 404(b).  That provision provides, in relevant part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . ."  M.R.E. 404(b).  Whereas M.R.E. 414 was "intended to provide for more liberal admissibility of character evidence in criminal cases of child molestation where the accused has committed a prior act of sexual assault or child molestation," MCM, Analysis of the Military Rules of Evidence app. 22 at A22-37 (2008 ed.),

16

admissibility under M.R.E. 404(b) is comparatively restrictive.

See Bare, 65 M.J. at 37-38.

> [T]his Court has cautioned that we do not approve "of
> broad talismanic incantations of words such as intent,
> plan, or modus operandi, to secure the admission of
> evidence of other crimes or acts by an accused at a
> court-martial under Mil.R.Evid. 404(b)"; and we have
> expressed "concern . . . with the dangers in admitting
> such evidence even if it meets the requirements of
> Mil.R.Evid. 404(b).  See Mil.R.Evid. 403."

United States v. Ferguson, 28 M.J. 104, 109 (C.M.A. 1989)

(alteration in original) (quoting United States v. Brannan, 18

M.J. 181, 185 (C.M.A. 1984)); see also Schroder, 65 M.J. at 58

("[T]here is a risk with propensity evidence that an accused may

be convicted and sentenced based on uncharged conduct and not

the acts for which he is on trial").

In United States v. Reynolds, 29 M.J. 105, 109 (C.M.A.

1989), this Court established a three-prong test, consistent

with Huddleston, 485 U.S. at 681, to determine the admissibility

of uncharged misconduct under M.R.E. 404(b):

> 1.  Does the evidence reasonably support a finding by the
> court members that appellant committed prior crimes, wrongs
> or acts?
>
> 2.  What "fact . . . of consequence" is made "more" or
> "less probable" by the existence of this evidence?
>
> 3.  Is the "probative value . . . substantially outweighed
> by the danger of unfair prejudice"?
>
> The evidence at issue must fulfill all three prongs to be
> admissible.

United States v. Barnett, 63 M.J. 388, 394 (C.A.A.F. 2006)

(alteration in original) (quoting and citing Reynolds, 29 M.J. at 109); see also United States v. McDonald, 59 M.J. 426, 429-30 (C.A.A.F. 2004) (explaining derivation of each prong from Huddleston).

The second prong mirrors the relevance concerns reflected under M.R.E. 401 and M.R.E. 402, while the third prong reflects the concerns ordinarily handled under M.R.E. 403. In this case, the military judge performed his M.R.E. 401, M.R.E. 402, and M.R.E. 403 analyses under the assumption that the evidence was admissible in the first instance under M.R.E. 414, and he did not separately undertake the three-part Reynolds test before admitting the uncharged misconduct under M.R.E. 404(b).

We will assume without deciding that the filename evidence reasonably supported a "determination by the factfinder that . . . appellant committed the prior misconduct" of possession or attempted possession of child pornography. United States v. Thompson, 63 M.J. 228, 230 (C.A.A.F. 2006). What remains problematic is the military judge's holding that:

> [Appellant's] prurient interest regarding sexual acts including teenage boys tends to show his propensity to engage in such acts. "A defendant with a propensity to commit acts similar to the charged crime is more likely to have committed the charged crime than another. Evidence of such a propensity is therefore relevant." United States v. Guardia, 135 F.3d 1326, 1328 (10th Cir. 1998) ([c]iting Old Chief v. United States, 519 U.S. 172 (1997)).

Outside of M.R.E. 413 or M.R.E. 414, this is not an approved

basis for admitting evidence.  M.R.E. 404(b).  The military judge's apparent reliance on M.R.E. 414 reasoning for his M.R.E. 404(b) analysis was error.

Nor are we independently persuaded that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.  We have upheld the admissibility of "possession of pornographic books, magazines, or videos concerning a particular partner or sexual act, at or near the scene of an alleged sex crime, around the time of that alleged offense," as probative of intent or motive to commit a similar sex act with a similar partner under M.R.E. 404(b).  United States v. Whitner, 51 M.J. 457, 460 (C.A.A.F. 1999).  But the probative value of the evidence in this case is substantially lower, because the underlying files were downloaded over a two-day period almost two years prior to the charged offenses and subsequently deleted and overwritten.

And the potential for prejudice from this evidence substantially outweighed whatever probative value the filenames did have.  The filenames were descriptive and disturbing.  And the military judge, because the evidence was treated first and foremost as M.R.E. 414 evidence, rather than as M.R.E. 404(b) evidence, allowed it to be used expansively.  The Government was allowed to use it -- and the members were instructed they could use it -- to show Appellant's propensity to commit the charged

19

offenses (an impermissible purpose under M.R.E. 404(b)) in a "he said/he said" dispute between Appellant and JP where the filenames -- taken as propensity evidence -- arguably corroborated JP's version of events.  Given this context, the evidence was substantially more prejudicial than it was probative of the charged offenses.  See generally Old Chief, 519 U.S. at 183-85 (holding that courts should determine probative value and unfair prejudice in the context of the entire case).

### III.  Harmless Error Analysis

Finding error, we test for prejudice.  Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2006) ("A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused"); Thompson, 63 M.J. at 231.  The question at this stage, which we review de novo, is whether the nonconstitutional error "had a substantial influence on the members' verdict in the context of the entire case."  See United States v. Harrow, 65 M.J. 190, 200 (C.A.A.F. 2007).  In answering this question, we consider four factors:  (1) the strength of the Government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence in question.  Id. (citing United States v. Berry, 61 M.J. 91, 98 (C.A.A.F. 2005)).  "When a 'fact was already obvious from . . . testimony at trial' and

the evidence in question 'would not have provided any new ammunition,' an error is likely to be harmless." Id. (alteration in original) (quoting United States v. Cano, 61 M.J. 74, 77-78 (C.A.A.F. 2005)). Conversely, where the evidence does provide "new ammunition," an error is less likely to be harmless.

This is a case of dueling facts -- Appellant's denial that sexual contact occurred pitted against JP's claim that it did.[6] The members were instructed that both had a bad character for truthfulness. The members were told that they could consider the filename evidence, which had nothing to do with JP, "for its tendency, if any, to show the accused's propensity to engage in sodomy or indecent acts or liberties with a child." And they did not ignore this evidence -- rather, they asked several questions about it. Finally, the prosecutor told the members in his closing argument:

> We already know, based on the evidence found on the accused's computer, that he has a prurient interest in preteens. You have seen the titles. And I'm not going to read those out in open court, but they are very highly suggestive, very perverted. This is already the thought process of the accused. So he waits for his opportunity.

The Government's case against Appellant was significantly strengthened by the improperly admitted filename evidence. The CCA appeared to recognize the importance of this evidence too,

---

[6] Appellant never disputed that JP was in his room.

21

reasoning that "JP's testimony is corroborated by the existence of the file name evidence . . . located on the appellant's personal computer, which graphically describes sexual behavior remarkably consistent with JP's description of his activity with the appellant." Yammine, 67 M.J. at 729-30. And the CCA highlighted the importance of these filenames when it stated that evidence it had found inadmissible was "far less prejudicial than the more specific and graphic computer evidence we have found admissible." Id. at 730.

The filename evidence, then, introduced "new ammunition" against Appellant found nowhere else in the record. While the question of prejudice might otherwise be a close one, "[m]embers are presumed to follow the military judge's instructions," Harrow, 65 M.J. at 201. The military judge's instruction, permitting members to use the filenames to show Appellant's "propensity to engage in sodomy or indecent acts with a child," tips the balance here. In context, we believe that the admission of and instruction on the use of the filename evidence had a "substantial influence on the findings," Berry, 61 M.J. at 97 (citations and quotation marks omitted), and materially prejudiced Appellant's substantial rights.

## IV. Decision

The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed in part and reversed in part.

22

The findings of guilty as to Specifications 1 and 2 of Charge I are set aside.  Specification 1 of Charge I is dismissed.[7]  The findings of guilty as to the Specification under Charge III and Charge III are affirmed.  The sentence is set aside.  The record of trial is returned to the Judge Advocate General of the Navy. A rehearing on the sentence and on findings as to the remaining offense under Specification 2 of Charge I (nonforcible sodomy with a child) is authorized.

---

[7] The findings as to Specification 1 of Charge I are not subject to a rehearing because, under United States v. Jones, 68 M.J. 465 (C.A.A.F. 2010), indecent acts with a child under Article 134, UCMJ, is not a lesser included offense of forcible sodomy under Article 125, UCMJ.

BAKER, Judge (concurring in the result):

The Government sought to offer certain file names as evidence under Military Rule of Evidence (M.R.E.) 414; however, the Government's proffer did not demonstrate for the purposes of the rule that possession of the file names, without more, qualified as "one or more offenses of child molestation." M.R.E. 414(a). Among other things, the Government's proffer did not include any of the files linked to the titles. Therefore, however suggestive the titles might have been, the military judge could not have known whether those files contained pictures or videos and whether those pictures or videos met the descriptive requirements of the rule. This, in my view, is insufficient for the purposes of analyzing propensity evidence under this rule.

This is so regardless of how sections (d)(5) and (d)(2) of the rule are read. As a result, I find it unnecessary to definitively interpret M.R.E. 414 in a manner that will impact all future cases involving possession of child pornography. Also, as importantly, I disagree with the Court's analysis of M.R.E. 414(d)(2), which appears to ignore the plain language of the rule and is based on inapt case law.

For purposes of the rule, an "'offense of child molestation' means an offense punishable under the Uniform Code of Military Justice . . . that involved . . . any sexually

explicit conduct with children proscribed by the Uniform Code of Military Justice." M.R.E. 414(d)(2). Based on this language the Court concludes that possession of child pornography does not qualify for admission under the rule, i.e., it does not "involve" "any sexually explicit conduct with children." Citing United States v. Miller, 67 M.J. 87 (C.A.A.F. 2008), the Court states, "We recently determined in the context of construing the offense of indecent liberties with a child . . . that to occur 'with' a child, or 'with' children, conduct must be in the physical presence of a child or children. By analogy, this rules out the possession or attempted possession of child pornography under the facts of this case," and presumably any other case. United States v. Yammine, __ M.J. __ (15) (citation omitted).

The Court's conclusion rules out the possession of any child pornography as a qualifying offense under the rule unless the accused himself is physically engaged in the child pornography "with" the victim in a picture or video. This conclusion is said to be based on Miller, in which this Court determined that the elements of indecent liberties with a child under Article 134, UCMJ,[1] required that the acts be committed in

---

[1] Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006). At the time of Miller's trial, the 2005 edition of the Manual for Courts-Martial, United States -- in which indecent acts with a child was a listed offense -- was in effect.

the physical presence of the child in order to meet the requirement of that offense that the conduct occurred "with" the child.

The Court's analysis of M.R.E. 414(d)(2) is problematic for two reasons. First, it does not address the text of the rule as a whole, and second, it ignores the distinction between the text of section (d)(2), a rule of evidence, and the text describing a distinct element of an offense -- indecent liberties with a child.

The question is whether possession of child pornography can ever be an offense of child molestation for the purposes of M.R.E. 414(d)(2). First, child pornography is certainly punishable under the UCMJ. Second, whether possession of the particular child pornography <u>involves</u> sexually explicit conduct with children will depend on the pictures or videos at issue -- that is, whether the pictures or videos contain "any sexually explicit conduct" and whether that conduct is "with" children. <u>Id.</u> The final inquiry is whether the sexually explicit conduct must be with the accused. The wording of the rule suggests not. According to the rule, the conduct need only <u>involve</u> "<u>any</u> sexually explicit conduct with children" (emphasis added), for which the accused can be punished under the UCMJ. The rule does not state that the conduct must be "by the accused." The conduct need only be attributable to the accused, i.e.,

3

punishable under the UCMJ, and involve conduct with children. That describes a broad array of child pornography.

The second problem with the Court's analysis is the reliance on Miller. Miller addressed certain language different from the introductory language of M.R.E. 414 highlighted above. The issue in that case dealt with the meaning of an element that explicitly required that the accused commit the conduct in question and required interpretation of the phrase "in the presence of." Miller, 67 M.J. at 89. There the language was clearly distinct from the language of the rule in this case, which addresses offenses that "involve[] . . . any sexually explicit conduct with children."

I would rather not have reached this issue today because under any reading of M.R.E. 414(d)(2) the Government simply did not meet its burden in this case. Given the dangers of unfair prejudice associated with propensity evidence and the number of child pornography cases arising in the military justice system, the limits and permits of M.R.E. 414 in this context should be decided based upon a more fully developed record and appellate arguments addressing this particular point of law.